UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONNIE BANKS,

       Plaintiff,                                  Civil Action No. 13-CV-10199

vs.                                            HON. BERNARD A. FRIEDMAN

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

       Defendants.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendants' motion for summary judgment. Plaintiff has responded and defendants have replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion on the briefs.

This is a pro se civil rights case brought by a Michigan prisoner. Plaintiff alleges that on April 23, 2012, defendant Trammell, an assistant resident unit supervisor at the Ryan Correctional Facility in Detroit, Michigan, approved plaintiff's transfer to a top bunk, despite the fact that plaintiff had been given a "special accommodation" three years earlier by a doctor at another Michigan prison, "requiring MDOC to house Plaintiff in a cell on the 'Bottom Bunk.'" Compl. ¶¶ 14, 28.[1] Defendant Dye, the senior officer in the unit to which plaintiff was transferred,

---

[1] A copy of a document attached as Exhibit A to plaintiff's response to defendants' summary judgment motion indicates that on 2-10-09, Robert D. Lacy, DO, issued a "special accommodations order" for plaintiff stating, "Housing: Bottom bunk." The order has a "start date" of 2-10-09 and no "stop date." Defendants indicate that at the time this doctor's order was issued, plaintiff was incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan. Defs' Br. at 1-2. Plaintiff states that he transferred to Ryan from the Macomb Regional Facility in March 2012. *See* docket entry 1, Pg ID 30.

allegedly "gave false information to Officer Oparka regarding limitation to transfer Plaintiff claiming a valid medical special accommodation." *Id.* ¶ 8. Defendants Oparka, Daley, Dorrough, and Deshields all allegedly "failed to investigate Plaintiff's claim to be under the supervision of medical special accommodation." *Id.* ¶¶ 9-12. Plaintiff alleges that "[t]he jumping up-into-the top bunk caused [his] damaged stomach lining to tear further, causing the Hernia to further protrude applying more pressure, and resulting in more pain and suffering." *Id.* ¶ 38.[2] Plaintiff claims Trammell approved the transfer to a top bunk in retaliation for a grievance plaintiff had filed against him on April 18, 2012, in violation of plaintiff's First Amendment right to petition the government for redress of grievances; that all of the individual defendants were deliberately indifferent to his serious medical needs, in violation of plaintiff's Eighth Amendment rights; that all defendants violated his rights under the Americans with Disabilities Act ("ADA"); and that all defendants were negligent. *Id.* ¶¶ 40-59. Plaintiff seeks injunctive and declaratory relief and damages.

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing

---

[2] In a grievance plaintiff filed after his bunk reassignment, plaintiff indicated that "[o]n 5/8/12, while jumping into my newly-assigned top bunk (there was no stool available to facilitate access to top bunk), Grievant re-injured his hernia condition. . . . On 5/15/12, Grievant met with Inspector Howard . . . [who] verified Grievant's Special Accommodation and <u>IMMEDIATELY</u> filled out the paperwork to have Grievant placed on a bottom bunk on 5/15/12." Docket entry 1, Pg ID 31.

party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See Anderson,* 477 U.S. at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

Plaintiff's first claim is that Trammell changed his bed assignment to an upper bunk in a different housing unit in retaliation for a grievance plaintiff had filed against Trammell and another corrections officer a week earlier, in violation of plaintiff's First Amendment rights.

As the court of appeals has stated,

[a] retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In the present case the first element is met, as prison inmates have a First Amendment right to file grievances. *See, e.g.*, *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, plaintiff has clearly failed to establish the second and third elements of this claim. The "adverse action" taken in this case was the change in plaintiff's bed assignment from a lower-level to an upper-level bunk. This is not action which "would chill or silence a person of ordinary firmness from future First Amendment activities." *Thaddeus-X*, 175

F.3d at 397.  Indeed, this alleged "adverse action" did not deter plaintiff from filing a grievance about the bed reassignment or from continuing to pursue the grievance that he alleges prompted the bed reassignment.  In short, a bed reassignment simply does not constitute the type of "adverse action" that can support a First Amendment retaliation claim.

Even if a bed reassignment could constitute "adverse action" under *Thaddeus-X*, plaintiff has not shown that a genuine issue exists as to the third element, i.e., a causal link between the bed reassignment and his grievance against Trammell.  Trammell avers that plaintiff's bed assignment was changed by the resident unit manager, Holt, "[a]s a result of prisoner Banks causing continuing conflict with his cell mates and Officers in his then current cell and wing."  Trammell Aff. ¶ 6.  Plaintiff has acknowledged that Holt was Trammell's "immediate supervisor."  Docket entry 1, Pg ID 31.  In his response to defendants' summary judgment motion, plaintiff openly concedes that it was Holt who "order[ed] ARUS Trammell to move Plaintiff to a different housing unit."  Pl.'s Resp. at 9.  Under these circumstances, plaintiff cannot demonstrate that Trammell reassigned him in retaliation for the grievance, but only that Trammell reassigned him in accordance with Holt's order.  Plaintiff has not named Holt as a defendant.

Plaintiff next claims that all of the individual defendants violated his Eighth Amendment rights because they failed to investigate whether he had a doctor's order for a lower-level bunk assignment.  To prevail on this claim plaintiff must show both that he had a serious medical need and that defendants were deliberately indifferent to it.  The legal standards have been articulated by the Sixth Circuit as follows:

> To succeed on his Eighth Amendment claim, Dodson must be able to prove "'deliberate indifference' to his 'serious' medical needs." *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting *Estelle*, 429 U.S. at 106, 97 S.Ct. 285).

4

An Eighth Amendment claim of denial of medical care has both objective and subjective components, the objective component requiring proof of a "sufficiently serious" medical need, and the subjective component requiring proof of "a sufficiently culpable state of mind in denying medical care." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle*, 429 U.S. at 104, 97 S.Ct. 285; and *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897 (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir.1990) (emphasis in original)). With regard to the subjective component:

> [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs is essential to a finding of deliberate indifference.

*Blackmore*, 390 F.3d at 896 (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; and *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.1994)) (internal quotations omitted).

*Dodson v. Wilkinson*, 304 F. App'x 434, 438-39 (6th Cir. 2008). Expressed another way,

> The standard includes both objective and subjective components. First, the deprivation of Eighth Amendment rights must be "sufficiently serious" such that the prison officials' acts or omissions objectively result in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834, 114 S.Ct. 1970 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), and *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Second, the prison officials must have acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298, 111 S.Ct. 2321. In other words, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th

Cir.1997) (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970).

*Jarriett v. Wilson*, 162 F. App'x 394, 402 (6th Cir. 2005).

In the present case, there is no genuine issue as to either the objective or the subjective component of plaintiff's Eighth Amendment claim. As a matter of law, plaintiff's three-year old hernia and/or doctor's order calling for a lower bunk accommodation were not "serious medical needs" under the applicable legal standards. Plaintiff has presented no evidence to suggest that he was either in obvious (or any) abdominal pain such that defendants "would easily recognize the necessity for a doctor's attention,"*Blackmore*, 390 F.3d at 897, or that a failure to provide the requested accommodation would pose "an excessive risk to inmate health or safety." *Woods*, 110 F.3d at 1222. To the contrary, plaintiff concedes that he was assigned to an upper level bunk on April 23, 2012, and that he managed to get himself into that bunk for at least two weeks without injury. *See* Compl. ¶ 36, and docket entry 1 Pg ID 31. In fact in the latter document, which is part of one of plaintiff's grievances, plaintiff indicated that he was injured when he attempted to "jump" into the top bunk without using a stool. Trammell notes that plaintiff "had a chair that he was able to use to get up on the top bunk . . . and that he also used to step down from the top bunk." Trammell Aff. ¶ 13. There is simply no evidence that plaintiff had a medical need that was so obviously serious that disregarding it, or failing to inquire into it, would unreasonably risk his health or safety.

Plaintiff's proof of the subjective component of this claim is non-existent. First, as plaintiff did not have an obviously serious medical need, it cannot be said that defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm

6

exists." *Id.* at 896.[3] Second, defendants clearly were not "deliberately indifferent" to plaintiff's

complaints.  Trammell avers, and plaintiff has not genuinely disputed, that he

> checked the MDOC's internal electronic information system, known as OMNI. There was an old, non-updated, special accommodation on the system for prisoner Banks when he was housed at a previous facility, dated [] February 10, 2009. . . . If the special accommodation is initially deemed to be permanent, then health care puts permanent on the special accommodation paperwork. . . . I contacted the health care staff. I was told by the health care staff that there was no valid special accommodation for a bottom bunk for Banks on Banks' medical record file.

Trammell Aff. ¶¶ 9, 11.  Under these circumstances, no jury could find that defendants were

deliberately indifferent to plaintiff's health or safety or that they denied plaintiff "the minimal

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.  Defendants are entitled to

summary judgment on this claim.[4]

Plaintiff's third claim is that defendants violated his rights under the ADA by failing

to accommodate his need for a lower bunk assignment.  This claim fails because it is based solely

on the alleged First and Eighth Amendment claims, *see* Compl. ¶¶ 51, 52, and those claims fail for

the reasons indicated above.  Moreover, even assuming plaintiff could show that he is a "qualified

---

[3] In this connection it is worth noting that plaintiff failed to show defendants a copy of the "special accommodation" order – the document he claims was so important to his health – but instead expected them to retrieve it from his medical records.

[4] The individual defendants other than Trammell are entitled to summary judgment on this claim for the additional reason that they had no ability to access plaintiff's medical records and no authority over his housing or bed assignments.  *See* Dorrough Aff. ¶¶ 9, 14; Daley Aff. ¶¶ 8, 15; Deshields Aff. ¶¶ 7, 12; Oparka Aff. ¶¶ 8, 12; Dye Aff. ¶¶ 7, 13.  Plaintiff has not shown that these defendants had any authority to look into his medical records, to influence his bed assignment, or to overrule Holt's order that he be moved.  As these defendants were powerless to take the action plaintiff requests, they cannot be said to have had any direct, personal involvement in the alleged constitutional violation.  This alone defeats the Eighth Amendment claim against them.

individual with a disability," he has not shown that "by reason of such disability" he was ever "excluded from participation in or . . . denied the benefits of the services, programs or activities of" the prison where he is incarcerated.  42 U.S.C. § 12132.  At most, plaintiff has shown that defendants were unaware of his need for a lower level bunk.  Plaintiff concedes that within one week of injuring himself by jumping into the top bunk without using a chair or stool, he received the requested accommodation.  Delay due to unawareness of a disability is not actionable; rather, plaintiff must show that defendant's denied him an accommodation "because of his disability." *Alster v. Goord*,

745 F. Supp. 2d 317, 340 (S.D.N.Y. 2010).  In the present case, plaintiff has made no such showing.

Plaintiff's final claim is that defendants were negligent.  This claim is not cognizable. *See, e.g., Daniels v. Williams*, 474 U.S. 327 (1986).  Accordingly,

IT IS ORDERED that defendants' motion for summary judgment is granted.

S/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: January 9, 2015
        Detroit, Michigan

8